[Crim. No. 96. Fourth Appellate District.—May 21, 1934.]

THE PEOPLE, Respondent, v. JOSE SANCHEZ, Appellant.

M. C. Spicer for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of murder, it being alleged that he shot and killed

one Leon Eckles at El Toro, in Orange County, on July 21, 1917. A jury found him guilty of murder in the first degree, recommending life imprisonment. This appeal is taken from the judgment and from an order denying a motion for a new trial. The main and practically the only point presented is that the evidence is not sufficient to sustain the judgment. The only arguments made are that most of the witnesses were unable to identify the appellant and that the statement made by him at the time of his arrest does not show that he was guilty of murder.

It appears from the evidence that on the evening of July 21, 1917, a dance was being held at El Toro which was largely attended by Mexican families. During the course of the evening a number of American young men, who had been attending a beer party near by, came to this dance and some of them took part in the dancing. Something seems to have occurred as a result of which all of the men present went outside of the hall and a rather general fist fight followed. A shot was fired which killed Eckles and immediately thereafter a man ran away into the darkness. Practically all of the men present, Mexicans as well as Americans, started in pursuit of the fleeing person, but stopped when someone called out that he was armed and might shoot someone else.

When the appellant was taken into custody, more than sixteen years later, he denied that his name was Jose Sanchez, and denied that a picture which the officers had was a picture of himself. He later admitted his identity and that this was his picture. In a statement made to the officers he admitted that he had shot the man at El Toro but said that someone hit him on the arm and his gun went off. He further stated that he pulled the gun out of his pocket to throw it away; that another fellow pushed him and the gun went off; that he did not intend to kill anyone; that it was an accident; that he did not know what happened or just how it happened; that he was scared and ran away; that he stayed that night at Santa Ana and went the next day to Los Angeles; that soon thereafter he went to Arizona, where he worked for about five years under an assumed name; that he came back to Los Angeles about 1921 and worked there for about ten years; and that since 1917 he had gone under the assumed name, except on one or two

occasions. On the witness-stand the appellant testified that he had the gun in his pocket when he went to the dance that night; that a friend of his had given it to him the night before in the hope that he might be able to sell it; that he made no effort to sell it that night; that he did not know whether or not it was loaded; that he was the last man to leave the dance hall; that as he went out the door someone struck him and he remained unconscious for three or four minutes; that when he came to he saw the groups fighting and that they were beating up one boy; that he took out the gun and pointed it upwards and fired a shot "to see if they would leave us alone and not continue beating us up"; that he did not point the gun at anyone; that while still pointing the gun upward someone pushed him and caused his arm to move and the pistol went off again; that he ran away because he became frightened when he saw everyone else running; and that he did not know that anyone had been shot until five years later when he returned to California.

The appellant's testimony was contradicted by that of a number of witnesses who testified that no one was within eight or ten feet of the man who fired the shot, that no one jostled him or pushed his arm; that the deceased was not fighting with anyone at the time and was on the outer edge of the crowd; that the man who fired the shot worked his way around on the outside and back of the deceased; that no one else in the crowd had a gun; and that the man with the gun fired a shot or two into the air and then pointed the gun at the deceased and, after hesitating, pulled the trigger. While most of the witnesses were at the time of the trial unable to identify the appellant, one of the eye-witnesses testified that during the course of the fight he saw the appellant with a gun in his hand and heard him say "if anybody wanted any trouble to come to him"; that he told the appellant to put the gun away; that the appellant said "no" and started into the crowd with the gun in his hand; that shortly thereafter he heard three shots fired; and that immediately thereafter he saw the appellant running away with the crowd after him.

It appears almost without conflict that the appellant fired the shot which killed the deceased. The defense that the shot was accidental was thoroughly discredited. Without

further comment it may be said that the evidence is entirely sufficient to support the verdict.

As a second point, the appellant asserts in his brief that his trial was without due process of law. Neither argument nor authority is presented and we are not informed in what respect it is claimed such a situation exists. The only reference in the brief is to certain pages of the transcript on which appear affidavits which were presented on motion for a new trial. We are unable to discover from the transcript any failure to accord the appellant a trial with due process of law and the record fails to disclose any reversible error in connection with the order denying a new trial.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 14, 1934.